[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15252
Non-Argument Calendar
_____

D. C. Docket No. 8:10-cv-01484-VMC-AEP


AARON JOSHUA SCOTT,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____
(October 31, 2012)

Before HULL, MARTIN, and EDMONDSON, Circuit Judges.


PER CURIAM:

Aaron Joshua Scott, with the assistance of counsel, appeals the

district court's order affirming the Social Security Commissioner's denial of

Scott's application for disability insurance benefits and supplemental security income, 42 U.S.C. § 405(g).[1]  No reversible error has been shown; we affirm.

Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied.  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  Under this limited standard of review, we may not make fact-findings, re-weigh the evidence, or substitute our judgment for that of the Administrative Law Judge ("ALJ").  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

A person who applies for Social Security disability benefits must prove his disability.  See 20 C.F.R. § 404.1512.  The ALJ uses a five-step process to determine whether a claimant has met the burden of proving his disability: (1) the ALJ determines whether the claimant is engaged in "substantial gainful activity;" (2) if not, the ALJ decides whether the claimant's condition or impairment is

---

[1] Scott claimed that he was affected by many impairments, including degenerative disc disease, diabetes, high blood pressure, high triglycerides with recurrent pancreatitis, obesity, post-traumatic stress disorder, and a depressive disorder.  Scott did not challenge the ALJ's findings about his physical impairments; his appeal focuses exclusively on his mental impairments.

"severe"; (3) if so, the ALJ decides whether the claimant's impairment meets or equals the severity of the specified impairments in the Listing of Impairments, thereby precluding gainful work activity; (4) if the claimant has a severe impairment that does not meet or equal the severity of an impairment in the Listing of Impairments, the ALJ assesses a claimant's "residual functional capacity" ("RFC"), which measures whether a claimant can perform past relevant work despite the impairment; and (5) if the claimant is unable to do past relevant work, the ALJ determines whether, in the light of the claimant's RFC, age, education, and work experience, the claimant can perform other work in the national economy.  See Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  "If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled."  Id. at 1239.

Scott's appeal focuses on step five in the evaluation process: whether he can perform other work in the national economy.  Scott specifically asserts that the ALJ failed to propound hypothetical questions that included his moderate inability to maintain concentration, persistence, and pace.

By two avenues, the ALJ might determine whether the claimant has the ability to adjust to other work in the national economy: by applying the Medical Vocational Guidelines or by using a vocational expert.  Phillips, 357 F.3d at 1239-

40. The ALJ here relied on the use of a vocational expert. When the ALJ uses a vocational expert, the ALJ poses hypothetical questions to the vocational expert to ascertain whether someone with the claimant's previously-determined limitations will be able to secure employment in the national economy. Id. at 1240.

We recently followed the example of many other circuits in rejecting the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting hypothetical questions to simple, routine tasks or unskilled work. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). However, we clarified that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. at 1180-81 (citations omitted). In Winschel, we highlighted that the ALJ did not indicate that medical evidence suggested the plaintiff's ability to work was unaffected by this limitation, nor did the ALJ otherwise implicitly account for the limitation in the hypothetical question. Id. at 1181. So, we concluded that, because the ALJ should have explicitly included Winschel's moderate limitation

4

in maintaining concentration, persistence, and pace in the hypothetical question to the VE, the VE's testimony was not "substantial evidence" that supported the ALJ's conclusion. Id.

Here, unlike the case in Winschel, the ALJ clearly indicated that medical evidence showed that Scott could complete simple tasks on a regular basis. The ALJ concurred with and adopted the opinions of the two state-agency mental-health consultants (Drs. Carter and Weber), who both concluded that, despite Scott's psychological problems -- including irritability, Scott was capable of completing simple tasks on a regular basis based on his ability to cope with routine activities and to get along with others. Dr. Carter noted that Scott was able to understand, remember, and carry out simple instructions and procedures and could concentrate to complete things he started. Dr. Weber also determined that Scott was able to understand and remember simple and fairly detailed instructions and could complete simple tasks on a regular basis, from a mental standpoint. Moreover, in his own function report, Scott did not mark the boxes provided to indicate that he had problems with his memory, completing tasks, concentration, understanding, or following instructions. Scott also noted that he regularly attended school, shopped for groceries, managed his money, watched television, and played on the computer.

The ALJ limited his hypothetical question to the VE to include work that would require "low stress, simple, unskilled; one, two, or three step instructions." He specifically noted in the hypothetical that the person had "psychological based symptoms which affect[ed] his ability to concentrate upon complex or detailed tasks; but would remain capable of understanding, remembering and carrying out simple job instructions."  Because the medical evidence demonstrated that Scott could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments by limiting the hypothetical to include only unskilled work. See Winschel, 631 F.3d at 1180.  In response to the ALJ's hypothetical, the VE testified that such a person would be capable of performing the job of an office helper and interoffice mail clerk.  Accordingly, substantial evidence supports the ALJ's decision that Scott could perform a significant number of light, unskilled jobs in the national economy.

AFFIRMED.

6